May it please the Court, Anthony Glassman on behalf of Reverend Price, I would like to reserve three minutes with the Court's permission. That's your own time because that's the total time. The clerk doesn't subtract. I see the clock. Thank you very much, Your Honor. The district court's finding, and I quote, that plaintiff is a corrupt and vain creature who has engaged in unethical conduct to support his lifestyle and is arrogant enough to openly boast of his conduct to his parishioners should have resulted in a denial of the anti-SLAPP motion filed by ABC pursuant principally to Mason v. The New Yorker magazine but also pursuant to other cases such as Flowers v. Carville, Weller v. ABC in the state court, etc. We know that the Supreme Court in Mason found that falsely attributed self-condemnatory comments are absolutely per se actionable. Was the anti-SLAPP motion solely on the issue of falsity? Solely on the issue of falsity. ABC, unique in my experience at least, took every other issue off the table, including intent. And we have argued to the Court that we think thereby that intent must be presumed and that ABC needs to be stopped from denying that they had the intent to create the self-condemnatory attribution because that's the only issue that they argued. But what Mason teaches is that falsely attributed self-condemnatory statements are actionable by themselves simply because regardless of truth or falsity, the manner of expression may suggest an attitude or manner of being that in essence would put the plaintiff in a terribly false light, very, very inconsistent with who that individual is. Here we know, and ABC admits it, that the falsely attributed clip to Reverend Price that he was speaking about himself rather than speaking about a hypothetically spiritually unfulfilled individual notwithstanding great wealth was something that Reverend Price was using to make a very important point and a point totally consistent with his philosophy and his religious teaching. And in this case, beyond the fact of the self-attribution and the condemnatory statement, what we also have is it being used to support all of the other, all of the other implications that led the district court to find that Reverend Price was, among other things, corrupt and unethical in connection with his manner of supporting his lifestyle. Let me ask you this. You said, I think, that the motion with respect to the falseness also amounts to a concession as to intent, that that's involved with it. But if I understand it, the other issues, like the extent to which actual malice would have to be considered and the public figure implications of all of this, that hasn't been reached at all. Is that correct? It has never been reached. We still, we're just in this narrow threshold part. We are on this very narrow and special part, Your Honor. We actually sought discovery, notwithstanding ABC's efforts to take intent off of the table. And that was denied. And we sought it because we thought if we can have a look at the tape that Ole Anthony sent to ABC, we would know precisely whether ABC was truthful when John Stossel went on the air and said, at the time that we broadcast this, we thought Reverend Price was speaking about himself and not about a hypothetical person. They denied that discovery to us, and the district court confirmed that. So we have no way of knowing, nor does this court, what footage they received and whether Mr. Stossel's statement in that regard was true or false. On that segment, on the clip segment, my understanding is your argument doesn't depend on their intent in any event. It just says, permoisant, that in effect they put quotes around what Reverend Price said as self-evaluation, self-description. And that is the harm because the viewer seeing that statement, not realizing he was talking about a third party, would carry some kind of damage to his reputation, which the district court then, as I understand it, said, well, in effect, no harm, no foul because, in fact, he does own a Rolls Royce. He does own a very expensive home, and he does, in effect, have unlimited use of a private jet. So it really, there's no material divergence from the true set of circumstances, and that what you're assigning to it by virtue of the Mason case is to say, well, somehow it is more reprehensible for him to be describing himself when he was, in fact, describing somebody else. So there isn't a material variance there, isn't that? And that doesn't have anything to do with ABC's intent, does it? No. At this stage, it doesn't. It might later on. Okay, so why under Mason, then, is there a material variance that makes it false simply because they used something that turned out to be a description of somebody else but to which Reverend Price arguably fits the, generally fits the picture anyway? The reason, Your Honor, is because Reverend Price never at any time, as Mr. Stossel said, boasts about his prosperity, and the word boast is critical in our analysis, and it's critical in what Stossel said in all of those teasers and in the 2020 report. Reverend Price speaks modestly and with humility about his prosperity. It is central to his teaching, and when he speaks about whatever prosperity he has, he always says that it is a gift of God, it is as a blessing of the Lord, and you can't live well, have a nice home, have a nice wristwatch, or whatever else you may have, and not thank God for the fact that you have been blessed. But he never, never, ever in any of the statements that were presented to the district court speaks of his prosperity or any of these individual objects in a sense of a personal trait or boasting about it, he links it to that which he preaches every day and has throughout his career, that if you live a spiritually fulfilled life and seek to help your fellow man, that good things will happen to you. But the way ABC presented it, as the court understood when he found that he was corrupt and unethical, is completely at odds from who Reverend Price is, how Reverend Price has lived his life, and what he has preached for almost 50 years to his parishioners. Well, so in your view, if we take the Masson case, we all pronounce it differently I guess, but if we take that case, the New Yorker case, and the standard that the district court, is it your view that the district court applied the wrong standard under that test? Yes, I think the district... Could you tell us what the standard is that it applied and the standard that it should have applied? The standard that the district court should have applied, Judge Schroeder, is if there is any material difference between that which they quoted or falsely attributed to Reverend Price, and that who he is. Who he is? Well, how he lives his life or how he has addressed his own personal prosperity, that that constitutes actionable defamation. In Mason, the Supreme Court unanimously, with no dissenting votes, found in essence that to have falsely quoted Mr. Masson or Mason, however one pronounces it, as being among other things, it was the principal false quote that they jumped on, as an intellectual gigolo, gave rise to an actionable defamation claim. And yet, if you read all of the statements in that Mason opinion, Mr. Mason said many things to Janet Malcolm, the author, that made it clear that he thought he was an exceptionally bright psychoanalytic analyst, author, and that the fate or the history of psychoanalysis and Freudian psychoanalysis rested with him. But he never said that I'm an intellectual gigolo. And the Supreme Court, with Justice Kennedy writing for the court, found that to put into his mouth that kind of a characterization, being an intellectual gigolo when he never said that about himself, among other things, was actionable. Here, Reverend Price has never once boasted about his personal possessions. He has never said, isn't it great that I have this, that, or the other. He has said, because of the life that I live, and because of the kind of life that I'm urging others to live, good things will happen to you. That's not a boast. Let me make sure I understand this. You're saying that the falsity is between what he is and what he was portrayed as saying. But he did say those words. And so I thought that your argument was that those words were said, but that he didn't mean them in the way that they were put in the show. That's true. That's absolutely accurate. He never said them in the way, to paraphrase, Your Honor, that the show made it appear. But there's an additional level of falsity in the falsely attributed quote, which is that they have portrayed him with a level of wealth that he doesn't have, and to say, among other things, that he has a, quote, $6 million yacht. He doesn't have it and has never had it. And he was clear and unequivocal in his denial. He doesn't have seven luxury automobiles and never had it. We think that ABC used that, whether they did or didn't know, that he never had those additional millions of dollars worth of objects, because it was all part of the way in which this carefully crafted and put together ABC report, this 2020 report, was designed to paint him as somebody who was dishonest, unethical, and corrupt, as even the district court found, and that he had diverted and misappropriated funds, quote, in the language of the district court, to support his lifestyle. It was, in essence, what we have is a case that goes beyond Misson. Not only do we have falsely attributed self-condemnatory statements, but we have a whole host of implications, statements, which individually may be true, although it doesn't matter, if they are juxtaposed in such a way so as to create a defamatory implication. And that's what we have here. You didn't have that, did you? But you're not contesting the fact that he was a very wealthy man. No, I'm not. And he had a lot of material goods. The clip, as I recall, has a picture of a house. That is his house, isn't it? Yes. And we do not deny that he is prosperous. We do deny that he has ever at any time owned a $6 million yacht or that at any time that he owned seven luxury cars. But we also deny that he ever at any time boasted, as I've said, and I won't repeat that, about the prosperity that he and his family have enjoyed. The boasting? Pardon? I'm trying to get at what the real gravamen of what was false here. Was it that he was portrayed as boasting? Within the context of the fabricated or the falsely attributed sermon, the 10-year-old sermon, it's the boasting and certainly the two assets which the record is clear he never owned. But beyond that, the $6 million yacht and the seven automobiles, his declaration to the court said, at no time did I have more than two automobiles. But it was all used as part and parcel of juxtaposing that along with all of the breathless words of indignation, incredulity, and shock by John Stossel, Robin Roberts, Diane Sawyer, all of ABC's superstars, to make Reverend Price look as though, as a district court found, that he was corrupt, unethical, and he could only have achieved these assets if only in one way, in essence, and that's by stealing them, misappropriating, or basically, in one way or another, taking money that was not his to support his lifestyle. Can I just ask, Claret, you're out of time, but it's important. I'm trying to understand. If you remove both, if they said instead that he spoke openly about his assets or his wealth and then cut to it and they were his words, he was describing somebody else, would the district court then have been wrong in its analysis to look at what he actually owned and say that that wasn't materially different? If you were only looking at the quote and if it had been entirely accurate, you still have to deal, Judge Fischer, with the fact that they flatly, wrongly accused him of having boasted about it. No, I'm saying take boast out of it. If you took boast out of it, it is possible that that could have been constructed in a way that would have been true and accurate, but you would still have to deal with the juxtaposition of everything in the broadcast, which, as we have argued to the court, was designed to make it clear that he had dishonestly diverted and misappropriated funds from donors to live the lifestyle that he was living. What do you seize upon? Is this just the general or is there something specific as to him where they accused him of doing that? They talk about the others. They show the woman with the big hair holding up her balance sheet or income statement. What are you picking on? Well, first of all, they included Reverend Price with the other ministers. There was never any effort to segregate one from the other. That's number one. They constantly said that enough, we have to stop this. It ends, the very last phrase from the report is Leonard being quoted as saying, there is a high probability that there is something wrong here, and we have argued in our brief that ABC basically adopted everything that Leonard had suggested about improprieties being engaged in by Reverend Price and the other ministers. Thank you. You're at Easter time. Good morning, Your Honor. I seek the pleas of the Court. Andrew White and Wynne O'Connor, Fink and Brenner on behalf of the ABC defendants. Mr. William Polaris is here on behalf of Ole Anthony and Trinity Broadcasting, and he has requested a minute? He's yielding. Okay. So I'll cover the whole case. It's clear from Mr. Glassman's argument that, as Judge Fischer noted, the crux of their position is this claim of boasting, and there's no denying that the word boast is in there prior to the. Just to be clear, though, I don't know that counsel has conceded this. Mason does, and I always called it Mason in the Eastman case. Mason talks about false attribution or false characterization. Yes. All right. And the concern that I understand that they're trying to articulate is that when you put somebody on the screen to describe himself and then use that to portray the person with words out of his own mouth, Mason is talking obviously about a written article and talks about the impact of quotations. Quotations convey the notion that the person is, these are what he actually says, and he's actually, whatever the substance is, is taking accountability for it. In this case, the way it comes across in the clip, I think there's no getting around it, that it is portrayed as him talking about himself. Absolutely right. And, therefore, that carries a weight in and of itself that is different from just saying that he, you know, somebody reports it, somebody else says, I've heard him say this, or whatever. So the boast aspect is an enhancement, as I understand it. But, you know, you can talk about boast, but I hope you address the Mason, you know, self-deprecation part. Let me go to that. And the fact that this concept, as I understand it, and Judge Fischer has adequately represented it, takes away from the fact that they don't need to give any facts in this particular instance. Even though they have admitted that you have met your burden, they need not present any other facts because of this distortation that happened, given what you've done in this particular situation. I think that's their argument. Well, that's a slightly different tactic. Let me address both of those, if I may. The Supreme Court in the New Yorker case, I'll avoid the parentheses, made it clear that the false attribution standing alone does not support a defamation case. They went back and looked at what Mason actually said, and then compared it to what was falsely, undeniably falsely quoted, and said, is there a disconnect? And in several cases they found, even though there was a false statement attributed to Mason, that he said something essentially the same, and therefore there was no harm, no foul, as the district court found in this case. And, in fact, that goes to the very fundamental question of substantial truth. He didn't say what you said he said. He said substantially the same things. And he said those substantially same things in numerous places and in numerous publications that he has made. What he said — That quote — I'm sorry? You changed the meaning of that quotation, didn't you? Well, that quotation, undeniably, the quotation of him speaking those words, he was speaking it out of context. He was speaking about somebody else. Yes. But he could have been saying those words and has said equivalent words about himself in many, many other instances. And that's what the district court found, that even though he didn't say those specific words about himself in that sermon, in other contexts — Publicly, before a congregation, said that I have seven votes and all that stuff. He didn't say those precise words, but he has said the equivalent. And, in fact, I think in many respects, particularly if you add in the concept of boasting, he has said even more extreme things. For example, he says, talking about himself, this is just a sample of Price speaking about Price. We have to go almost overboard on the subject of prosperity. I have some Rolls-Royce trash cans now, brother. God wants me to prosper. Why shouldn't I have the best? Here's another one. Everything that I have truly desired, I have named it, I have claimed it, and I got it. Maybe I am God's special child. That's Price on Price. He says he lives in a beautiful secluded home, which was accurately portrayed, that costs 21 times more. That's a quote. 21 times more than my prior house. He has even identified Jesus Christ as the treasurer on a million-dollar bill that he published on the cover of one of his videotape collections. Jesus Christ is the treasurer with a seal of his church. And it's a videotape roll. Excuse me. Is this the ground? This is what the district court decided? Yes, absolutely. The district court analyzed what Price said about himself in innumerable other circumstances and found it is the substantial equivalent, and under the substantial truth doctrine, even if there is literal falsity, if what is published is substantially true. And in this case, that's what the district court found, and the Mason case said a statement cannot be considered false to support a defamation claim unless the statement would have had, quote, a different effect on the mind of the reader or the listener compared to the admitted truth. And in this case, if instead of that videotape that they object to, ABC had said, and the lead-in, if you'll recall, was there was an interview with one of the parishioners who said, I believe my money is being put to excellent use without one question. And then the voiceover, Stossel says, and yet her pastor, Fred Price, boasts that. And then there's the video. If in place of the video, ABC had simply quoted Price, and yet her pastor, Fred Price, boasts that he lives in a palatial house, palatial is his word, drives a Rolls Royce, his words, enjoys the exclusive use of a Gulfstream private jet, and owns, quote, everything else I have truly desired, all because he believes that he may be, as Price says, God's special child. Those are directly out of Price's mouth. That would have no substantially different effect on the mind of the listener or the viewer than what ABC did broadcast, and that's what the district court found. And with respect to boasting, Your Honor, we cited in our brief the dictionary definition of boasting, which is in footnote 13 of our brief. It means to call attention to something that is a source of pride, and that definition is further enhanced by the, it often suggests, and this is a quote from the dictionary, ostentation or exaggeration, but it might even imply claiming with proper or justifiable pride. Your Honor, we submit that ostentation and exaggeration are probably the two best words to describe what Price says about himself and his material wealth. What is the, tell me now, because on the, what is the issue that you see is before us? The sole issue is whether or not what ABC broadcast vis-à-vis Fred Price specifically is materially false or whether it is substantially true. And now, is it, okay, this is what I'm trying to understand. There's a portion of the district court's opinion that I didn't quite understand, obviously. Plaintiff contends that the case should survive defendant's challenge because the clip constitutes a self-condemnatory quote and argues that regardless of the truth or falsity of the clip, it is defamatory because the manner of expression or even the fact that the statement was made indicates a negative personal trait he doesn't hold. Then the court goes on to say, but he's bragged before. Right. Correct. Is that really, does that pertain to the question that is before us, which is just the truth or falsity of the statement as it was in the clip? That's what's confusing me. I believe the issue in front of the Court is whether the image of Price as presented in that broadcast, the whole seven minutes of the report, is a, is substantially true or false. And he has the burden of presenting evidence. Under the anti-SLAPP statute, we having met the Bush standard, the burden is on Price to present evidence of falsity. And proving that, which we admit, that the videotape itself is out of context and therefore is not literally true, does not get him there under the substantial truth standard because what we published about Price is substantially true. One of the items that the Court asked about is the intent standard, and Mr. Glassman argued, as he did in his briefs, that because ABC deliberately limited this anti-SLAPP motion to falsity alone and none of the other issues, including its protections under the actual malice standard, that therefore the Court should presume that ABC acted with an intent to defame Price. Unfortunately for Mr. Glassman, the issue of intent was clearly addressed by the District Court. He made a motion to compel discovery on that subject, and Magistrate Judge Mumm issued an order in which the Court found that the issue of intent, of ABC's intent, is irrelevant, irrelevant to this motion. Mr. Glassman objected and asked the District Court to overturn that ruling, and the District Court did not. The District Court affirmed that ruling. So it stands that the District Court has found and Mr. Glassman and Price have not appealed from Magistrate Mumm's specific finding that ABC's intent is not relevant to this proceeding. Therefore, whatever ABC's intent was does not measure or does not weigh in on whether or not what they published about Price was substantially true or not. Can I bring you back to Masson or New Yorker? One of my favorite cases. Thank you. Okay. So I'm reading from 511 onward in the U.S. report. And I'm going to take excerpts out. First, the quotation, a fabricated quotation may injure reputation at least two sentences, either giving rise to a conceivable claim of defamation. First, the quotation might injure the speaker because it attributes an untrue factual assertion to the speaker. Your argument is that this is not an untrue factual assertion because he said the same thing in essence elsewhere. Absolutely right. And if you go ahead. Let me just go in. Of course. Okay. Second, regardless of the truth or falsity, the other aspect, the attribution may result in injury to reputation because the manner of expression or even the fact that the statement was made indicates a negative personal trait or an attitude the speaker does not hold. Why doesn't that apply here? Two reasons. Well, the manner of speaking, if you look at the videotape, Mr. Glassman says that he is walking around arrogantly boasting. He's just rattling off as a matter of fact. I own this. I own this. I own this. I own this. If you look at his actual publications, there's no question that he's boasting. No. No. We're not. The manner of expression, which is not referring to himself, nonetheless, referring to himself, indicate a negative personal trait or an attitude the speaker does not hold. The manner of expression I take from that refers to the quotation. Yes. The manner. The way it's presented. The way it's presented. As him. As him. As him speaking. Him speaking. Okay. If there is a negative personal trait or attitude of the speaker that is depicted in that videotape, it is depicted even more graphically in his actual statements, which, therefore, are, if it is a negative personal trait, it is one that he holds and an attitude that he holds in truth. Okay. Then, to go on, Mr. Sahn, then may be complicating it. But if an author alters a speaker's words but effects no material change in meaning, including any meaning conveyed by the manner or fact of expression, the speaker suffers no injury. You're relying on that, correct? Correct. Okay. And it goes on and winds up, we conclude that the deliberate alteration of words uttered by a plaintiff does not equate with knowledge of falsity for purposes of New York Times and so on, unless the alteration results in a material change in the meaning conveyed by the statement. The use of quotations to attribute words not in fact spoken bears in a most important way on that inquiry, but it is not dispositive in every case. Now, when he spoke, he was not talking about Reverend Price. Correct. Okay. So, what you altered, what ABC altered, was to take a statement about somebody else and attribute it and portray it as if he were speaking about himself. Correct. And you understand, Masson, to say making that comparison, comparison to what the original statement made. It is okay to take that, even with knowledge, apparently. They could have, instead of deciding to use his own words really talking about himself, as I understand your theory, they could have taken this quote, because it was substantially accurate, and used that as if Price was speaking about himself. And Masson would not care about that. Masson does not condemn, per se, the use of a false attribution. It has to be a false attribution of a statement with a false meaning. And, in fact, the court went on to analyze each specific statement, and one of them was that Masson changed his name because, quote, it sounded better. Masson never said anything like that. What he did say was you have, you have, ABC has, in the words of Masson, materially changed the meaning of the original quotation, of the original statement, by attributing it to Price. That, you can't be any more material. So you are changing the meaning. You're taking my words, describing somebody else, and saying it's okay for me to take those words, even knowing that I'm doing it, and turn that into a self-condemning statement, which is the whole posture of this broadcast. And I have some trouble with your reading of Masson when he goes that far,    and I have some trouble with your reading of the original quote, if that's how far you go. Do you want to respond to that briefly, please? Yes, thank you, Your Honor. Judge Fischer, I want to be very clear. Under Masson, the threshold and fundamental issue is substantial truth, and there were fabricated quotations published. The court said that the fabrication alone does not give rise to falsity or liability. Rather, you have to look at what the speaker actually said and compare it to what was published. And if there is a disconnect, then there can be falsity and liability. But if what has been published as a quote lines up with what was actually said, then I believe Masson says that there cannot be defamation liability. And that's what the district court came down on, that the substantial truth. Thank you, Your Honor. We'll give you a minute, Your Honor, about a bit of this field. May I have it? The adversary went over. Sixty seconds of motion, Your Honor. Yes. One principal point, and that is that the overarching or the principal image left by this broadcast was not how many assets Reverend Price has. It is how did he acquire them. And we have offered lay and expert declarations to the effect that a reasonable juror would conclude that the way he was portrayed by ABC, including their use of the self-condemnatory falsely attributed quote, is that he misappropriated and diverted parishioner and donor's funds. Again, it's not how many assets, how did he acquire them. This wasn't a show in which they talked about theology. It is a show in which they spoke about misappropriation or deceiving parishioners into misappropriating and acquiring great wealth. That is why this matter, this antislap should be reversed and sent back down to the district court for trial. Thank you very much, Your Honor. The matter just argued is submitted for decision. That concludes the court's calendar for today. The court stands adjourned. All rise. Ms. Clark, for this session, stands adjourned. Thank you, Your Honor.
judges: Schroeder, Fisher, Smith N. R.